## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAPRI DRAYTON,                    :
      Plaintiff              :
                        :      No. 1:23-cv-1308
      v.                     :
                        :      (Judge Rambo)
AMANDA MCINTYRE, *et al.*,        :
      Defendants             :

### MEMORANDUM

Plaintiff Kapri Drayton initiated the above-captioned *pro se* action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging a host of constitutional violations by 17 different federal officials. Drayton improperly attempts to assert multiple, unrelated causes of action against diverse defendants in a single complaint. Additionally, because many of his claims are deficient, the Court will dismiss the bulk of his complaint and any amended pleading will be required to comply with the joinder limitations provided by the Federal Rules of Civil Procedure.

## I.    BACKGROUND

Drayton's pleading is difficult to follow, as he is attempting to raise a laundry list of unrelated grievances regarding seven months of incarceration at FCI Schuylkill. As best the Court can ascertain, he alleges the following constitutional torts: (1) an Eighth Amendment conditions-of-confinement claim involving being kept in four-point restraints for 24 hours (Doc. No. 1 at 8); (2) due process violations

concerning a disciplinary proceeding, (*id.* at 9); (3) an Eighth Amendment violation involving verbal harassment, (*id.*); (4) an Eighth Amendment violation involving denial of recreation and use of profanity, (*id.* at 10); (5) a First Amendment retaliation claim, (*id.* at 9), and (6) an Eighth (and possibly First) Amendment violation regarding food service, (*id.* at 10).

Drayton's complaint is deficient in multiple respects.  First, there is a lack of personal involvement for many named defendants.  Second, most of Drayton's allegations fail to state a claim for relief.  Third, Drayton attempts to join disparate and unrelated claims and defendants without a proper basis for joinder under the Federal Rules of Civil Procedure.

## II.    STANDARD OF REVIEW

Courts are statutorily obligated to review, "as soon as practicable," unrepresented prisoner complaints targeting governmental entities, officers, or employees.  *See* 28 U.S.C. § 1915A(a).  One basis for dismissal at the screening stage is if the complaint "fails to state a claim upon which relief may be granted[.]" *Id.* § 1915A(b)(1).  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard to screening a *pro se* prisoner complaint for sufficiency under Section 1915A(b)(1) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x

157, 159 & n.5 (3d Cir. 2019) (*per curiam*) (nonprecedential); *cf. Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—

which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 681.

Because Drayton proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Drayton, is incarcerated. *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

## III. DISCUSSION

The Court first observes that, because Drayton is suing federal actors for alleged constitutional deprivations, his claims implicate *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Causes of action relying on *Bivens*, however, have been extremely circumscribed in recent years, and extending the *Bivens* remedy is now a decidedly "disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 137 S. Ct. 1843, 1857 (2017) (citation and

internal quotation marks omitted).  Nevertheless, the Court need not determine at this juncture whether a *Bivens* remedy exists for Drayton's claims, as he largely fails to plausibly state constitutional violations.

As noted above, Drayton is attempting to assert unrelated constitutional claims against a host of different prison officials.  Drayton's complaint is riddled with pleading deficiencies.  The Court will address these deficiencies in turn.

### A.    Personal Involvement

It is well established that, in *Bivens* actions (as in lawsuits pursuant to 42 U.S.C. § 1983), liability cannot be predicated solely on the operation of *respondeat superior*.  *See Ashcroft v. Iqbal*, 556. U.S. 662, 676 (2009).  Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to liability.  *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance"); *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were

"properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Of the 17 defendants identified, Drayton pleads personal involvement for only Foura, Chambers, Horan, McIntyre, Berkihiser, Croker, and Chang. His allegations against Sage, Cantrell, and Barrat do not establish how they were involved in any of the alleged Eighth Amendment violations. His allegations against Raup, Howard, Connor, Rakus, and Kibiki concern only their involvement in the post-incident grievance process, which does not amount to personal involvement in the constitutional violation itself. Finally, Drayton names "Chaplain Messinger" in his list of defendants, but Messinger does not appear anywhere in the body of the complaint. Consequently, Sage, Cantrell, Barrat, Raup, Howard, Conner, Rakus, Kibiki, and Messinger must be dismissed for lack of personal involvement.

### B.    Eighth Amendment Claims

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes[] cannot be free of discomfort." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (second alteration in original) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). Nevertheless, the state cannot subject an inmate to cruel and unusual punishment or inhumane treatment, such as deprivation of "basic human needs" like "food, clothing, shelter, medical care, and reasonable safety[.]" *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation

omitted). To state an Eighth Amendment conditions-of-confinement claim, a plaintiff must plausibly plead both objective and subjective elements. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015). Objectively, the prisoner must demonstrate that "the prison official deprived the prisoner of the minimal civilized measure of life's necessities," often referred to as a "sufficiently serious" deprivation. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "The benchmark for alleging such deprivation is not that the inmate was merely uncomfortable; he or she must show they are 'incarcerated under conditions posing a substantial risk of serious harm.'" *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2023) (quoting *Farmer*, 511 U.S. at 834).

Subjectively, the prisoner must show that "the prison official acted with deliberate indifference" to the prisoner's "health or safety." *Id.* (citing *Farmer*, 511 U.S. at 834). Deliberate indifference means that the defendant "acted or failed to act despite having knowledge that her actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm." *Id.* at 227 (citing *Farmer*, 511 U.S. at 842).

Drayton appears to assert three separate and unrelated Eighth Amendment conditions-of-confinement claims. He first alleges that, on December 20, 2021, he was placed in four-point restraints without an opportunity to eat or drink or use the restroom for approximately 24 hours. (Doc. No. 1 at 8.) He claims that he asked

defendant Foura to use the restroom, and Foura responded by pointing to where Drayton was laying and telling him, "[T]hat's your bathroom." (*Id.*) Drayton recounts that he eventually urinated himself and had to lay in his own urine for twelve hours. (*Id.*) These allegations, taken as true, sufficiently state an Eighth Amendment claim against Foura.[1]

Drayton next claims that his Eighth Amendment rights were violated when he was "constantly verbally assaulted" by Horan while confined in the SHU. (Doc. No. 1 at 9.) He additionally asserts that Croker denied him "rec" and used profanity toward him. (*Id.* at 10.) However, it is well settled that conduct like verbal harassment, taunting, and use of profanity, without any injury or threat thereof, is insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment. *See Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under § 1983"); *see also Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); *Manning v. Flock*, No. 1:11-cv-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (collecting cases); *Graham v. Main*, No. 10-cv-5027(SRC), 2011 WL 2412998, at *24-25

---

[1] As noted earlier, Drayton also attempts to include Sage, Cantrell, and Berkihiser in this claim, but his single allegation that these Defendants "had the power to stop these brutal acts but ignored them," (Doc. No. 1 at 8), does not rise above an assertion of *respondeat superior*. Moreover, Drayton has not plausibly alleged that these Defendants were subjectively aware of the alleged conditions of confinement and were deliberately indifferent to his health or safety.

(D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.") (collecting cases); *Mohamed v. Aviles*, No. 06-cv-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases). Moreover, temporarily being denied recreation does not implicate an Eighth Amendment violation, in particular because it does not involve life's necessities or threaten an inmate's health or safety. The Eighth Amendment claims against Horan and Croker, therefore, must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

Drayton's final conditions-of-confinement claim involves food service. He alleges that, "during the month of Ramadan," Food Service Administrator Chang sent "cold food," late meals, "food that was impossible to make," or meals that were different than those received by other inmates. (Doc. No. 1 at 10.) These allegations do not rise to the level of an Eighth Amendment violation. Drayton does not allege that he was denied meals, that his food was inedible, or that his meals fell below a constitutional minimum. Nor does he plausibly plead that Chang was aware of an Eighth Amendment violation and deliberately indifferent to Drayton's health or safety. This claim, therefore, must also be dismissed under Section 1915A(b)(1).[2]

---

[2] Insofar as Drayton may be attempting to assert some type of First Amendment religious free exercise claim with these allegations, (*see* Doc. No. 1 at 11), he has not plausibly stated any such First Amendment claim, either.

### C.     Fifth Amendment Due Process Claim

In a different section of his complaint, Drayton alleges that his procedural due process rights were violated when he did not receive his incident report within 24 hours of the incident and did not receive the DHO's report within 15 days after the disciplinary hearing.  (*See* Doc. No. 1 at 9.)  As to the incident report, Drayton appears to be relying on 28 C.F.R. § 541.5(a).  As to the DHO report, Drayton may be invoking 28 C.F.R. § 541.8(h).  There are at least three reasons why this claim fails.

First, and most importantly, Drayton has not indicated that a protected liberty interest is involved in the instant due process claim.  Drayton does not allege, for example, that he lost good conduct time as a result of the disciplinary proceedings. Without identifying a protected liberty or property interest that is at stake, Drayton simply cannot state a procedural due process claim.  *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (noting that first step in any procedural due process claim is identifying a protected interest that is "at stake").

Second, Section 541.5(a) states, in pertinent part, that "[a] staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing.  You will *ordinarily* receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." 28 C.F.R. § 541.5(a) (emphasis supplied).  As the plain language of the regulation indicates, an

inmate will "ordinarily" receive the incident report within 24 hours of staff becoming aware of the prisoner's involvement, which naturally means that the regulation does not require or guarantee receipt of the incident report within 24 hours. *See Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining district court's reasoning that "ordinarily" held within a certain time does not mean required to be held within a certain time).  Moreover, the United States Court of Appeals for the Third Circuit, albeit in nonprecedential opinions, has repeatedly addressed this exact issue and found that failure to receive notice of the charges within 24 hours after prison officials became aware of the incident, by itself, does not amount to a constitutional violation.  *See Gross v. Warden, USP Canaan*, 720 F. App'x 94, 96-97 (3d Cir. 2017) (nonprecedential); *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (nonprecedential); *Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) (nonprecedential).

As for the alleged untimely DHO report, that claim fails for similar reasons. Initially, the regulations, as written, do not provide a specific time frame for receiving a written copy of the DHO report. *See* 28 C.F.R. § 541.8(h).  Additionally, the Third Circuit has explicitly rejected this type of claim without a showing of prejudice. *See Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) (nonprecedential) (finding that, because delay in receiving DHO's report "had no prejudicial effect on [petitioner]'s administrative appeal," such a claim was

meritless).  Drayton has not identified any reason why he should have received the DHO report within 15 days after the hearing, nor has he pled that he suffered any prejudice from the purportedly untimely report.

Third, to the extent that Drayton maintains that the BOP's alleged violation of internal policies or regulations regarding the timing of the reports infringes his Fifth Amendment due process rights, it is well settled that "a violation of internal policy does not automatically rise to the level of a Constitutional violation." *Atwell v. Lavan*, 557 F. Supp. 2d 532, 556 n.24 (M.D. Pa. 2007) (citations omitted); *see Bullard v. Scism*, 449 F. App'x 232, 235 (3d Cir. 2011) (nonprecedential) (explaining that, even if prison officials violated a regulation, such a violation "is not actionable"); *Jordan v. Rowley*, No. 1:16-CV-1261, 2017 WL 2813294, at *2 (M.D. Pa. June 29, 2017); *Williamson v. Garman*, No. 3:15-CV-1797, 2017 WL 2702539, at *6 (M.D. Pa. June 22, 2017); *see also United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) (noting that even violations of state law will not automatically have a "constitutional dimension").  Moreover, Drayton has not pled facts showing that the regulations themselves create a liberty or property interest such that their violation could infringe his due process rights.  *See Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) (nonprecedential) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)).

For all the foregoing reasons, Drayton has not plausibly stated a Fifth Amendment procedural due process claim against Chambers merely by alleging that certain BOP regulations or policies were violated.  This claim, therefore, must be dismissed pursuant to Section 1915A(b)(1) as well.

### D.     First Amendment Retaliation

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).  To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and (3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.  *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

It is possible that Drayton is attempting to assert a retaliation claim on page 9 of his complaint.  He alleges that Croker, McIntyre, and Berkihiser retaliated against him because he physically assaulted Croker (and possibly other prison officials).

(*See* Doc. No. 1 at 9.)  This claim fails at the first element, because assaulting a prison official is obviously not the type of conduct that is protected by the First Amendment.  Drayton has likewise failed to allege that he suffered an actionable adverse action at the hands of the named defendants.  Drayton's retaliation claim, therefore, is fatally deficient and must be dismissed with prejudice pursuant to Section 1915A(b)(1).

### E.    Claim Against the BOP

Drayton lists the BOP as the final named Defendant.  (*See* Doc. No. 1 at 7.) However, any *Bivens* claim leveled against the BOP—an agency of the United States—is barred by sovereign immunity, as Congress has not carved out an exception to sovereign immunity for such claims.  *See Becton Dickinson & Co. v. Wolckenhauer*, 215 F.3d 340, 345 (3d Cir. 2000) ("It is black letter law that the United States cannot be sued without the consent of Congress.") (internal citation omitted); *see also FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (rejecting extension of *Bivens* remedy to claims against federal agencies); *Hatten v. Bledsoe*, 782 F. App'x 91, 95 (3d Cir. 2019) (nonprecedential) ("The District Court properly dismissed Hatten's *Bivens* claims against the BOP, as federal agencies are shielded by sovereign immunity absent an explicit waiver."); *Perez-Barron v. United States*, 480 F. App'x 688, 691 (3d Cir. 2012) (nonprecedential) (affirming summary judgment

against prisoner-plaintiff, granted on basis of sovereign immunity, for Eighth Amendment *Bivens* claims against BOP).

## F.    Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [the Prison Litigation Reform Act of 1995] should receive leave to amend unless amendment would be inequitable or futile." *Grayson*, 293 F.3d at 114. The following claims will be dismissed with prejudice (*i.e.*, without leave to amend) because leave to amend would be futile: the Eighth Amendment claims regarding verbal harassment, use of profanity, and loss of recreation, as well as Plaintiff's First Amendment retaliation claim. The following claims will be dismissed without prejudice but leave to amend will not be permitted in this case because there is no basis for joinder of defendants: the Fifth Amendment procedural due process claim against Chambers; the Eighth (and possibly First) Amendment claim against Chang involving food service. Additionally, the BOP will be dismissed pursuant to 28 U.S.C. § 1915A(b)(2), as any *Bivens* claim is barred by sovereign immunity.

As noted above, Drayton has attempted to allege multiple, unrelated claims against different prison officials. Drayton cannot do so in a single complaint. These claims are not part of the "same transaction, occurrence, or series of transactions or occurrences" underlying the Eighth Amendment claim involving the December 2021 four-point restraint incident, nor is there a "question of law or fact common to

all defendants" such that these claims and additional defendants could be permissively joined together in this action. *See* FED. R. CIV. P. 20(a)(2)(B). To the extent that any unrelated claim is dismissed without prejudice, Drayton is free to file additional lawsuits based on these allegations, although the Court notes that each claim would require a separate complaint and Drayton would be responsible for paying the filing fee for each case. *See id.*; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that "[u]nrelated claims against different defendants belong in different suits" not only to prevent confusion but also to ensure that prisoners pay the required filing fees under the PLRA); *Redding v. Bilinski*, No. 3:15-cv-1047, 2015 WL 3710842, at \*1-2 (M.D. Pa. June 12, 2015) (same). Drayton would also have to fix the pleading deficiencies identified herein.

If Drayton chooses to file an amended complaint in conformity with this Memorandum to attempt to establish personal involvement for other Defendants (*i.e.*, Sage, Cantrell, and Berkihiser) in the December 2021 incident, it should be a stand-alone document, complete in itself and without reference to any previous pleadings. The amended complaint should set forth Drayton's Eighth Amendment December 2021 conditions-of-confinement claim in short, concise, and plain statements, and in sequentially numbered paragraphs. Drayton must address the pleading deficiencies identified in this Memorandum, and he must include all allegations within his pleading. He must also specify the offending actions taken by

a particular defendant, sign the amended complaint, and indicate the nature of the relief sought. Drayton may not include unrelated claims against different defendants in violation of Federal Rule of Civil Procedure 20(a)(2). Such claims require separate lawsuits, as explained in more detail above. Additionally, Drayton may not include claims that have been dismissed with prejudice.

If Drayton chooses not to amend, this case will proceed as to his Eighth Amendment December 2021 conditions-of-confinement claim against defendant Foura only. The Court does not opine on the availability of a *Bivens* remedy for this claim at this juncture.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss in part Drayton's complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. The Federal Bureau of Prisons will be dismissed pursuant to 28 U.S.C. § 1915A(b)(2). Limited leave to amend will be granted, as specified herein. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Dated: November 6, 2023