**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KAPRI DRAYTON,** | : | **No. 1:23-CV-1308** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **AMANDA MCINTYRE, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Kapri Drayton initiated the above-captioned *pro se* civil rights action in 2023, alleging numerous constitutional violations by multiple prison officials at FCI Schuylkill. His claims have been substantially narrowed to a single Eighth Amendment conditions-of-confinement claim against one corrections officer. That remaining Defendant now moves to dismiss Drayton's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant Defendant's motion to dismiss.

**I.    BACKGROUND**

Drayton lodged the instant civil rights lawsuit on August 7, 2023. (See generally Doc. 1). He initially sued sixteen FCI Schuylkill officials and the Bureau of Prisons (BOP), raising "a laundry list of unrelated grievances regarding seven months of incarceration" at that facility. (Doc. 12 at 1). As the court noted during

its initial screening, all Defendants were officials at a federal prison (or were a federal agency) and thus Drayton's claims seeking liability for constitutional violations were presumably invoking Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). (See Doc. 12 at 4).

The court screened Drayton's complaint as required by 28 U.S.C. § 1915A and identified material pleading deficiencies with most of his causes of action. (See generally Doc. 12). First, the court observed that Drayton had failed to plead personal involvement for over half the named Defendants. (See id. at 5-6). The court then reviewed Drayton's Eighth Amendment conditions-of-confinement claims, finding that he only plausibly alleged such a claim against one defendant: Lieutenant J. Foura. (See id. at 6-9 & n.1).

The court subsequently screened Drayton's Fifth Amendment procedural due process claims and determined that they failed to state a claim for relief for multiple reasons. (See id. at 10-13). Specifically, Drayton had not identified a protected liberty or property interest and had also failed to show prejudice from the alleged late receipt of disciplinary documents. (See id.).

Next, the court dismissed with prejudice Drayton's retaliation claim because he had not, and could not, identify protected First Amendment conduct that he had undertaken for which prison officials allegedly retaliated. (See id. at 13-14).

2

Finally, Drayton's Bivens claim against the BOP was dismissed because any such claim is unequivocally barred by sovereign immunity. (See id. at 14).

The court granted Drayton limited leave to amend with respect to his Eighth Amendment conditions-of-confinement claim. (See id. at 15-17). In that claim, Drayton alleged that, on December 20, 2021, he was held in four-point restraints for 24 hours without food, water, or bathroom access. (See id. at 1, 7-8 (citing Doc. 1 at 8)). He further alleged that, after Foura denied him bathroom access, he was forced to lay in his own urine for 12 hours. (See id. at 8 (citing Doc. 1 at 8)).

Alternatively, if Drayton did not file an amended complaint that plausibly alleged liability for other Defendants, the court explained that "this case will proceed as to his Eighth Amendment December 2021 conditions-of-confinement claim against defendant Foura only." (Id. at 17). The court also expressly noted that it did not "opine on the availability of a Bivens remedy for this claim at this juncture." (Id.)

Drayton did not file an amended complaint, so the court dismissed the other potential Defendants and served Foura. (See Doc. 14). Foura now moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or alternatively for summary judgment under Rule 56 for failure to

3

exhaust administrative remedies.  (Doc. 17).  Those motions are fully briefed and ripe for disposition.

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss under FED. R. CIV. P. 12(b)(6)

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.  See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted).  At step

4

one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Drayton proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Drayton, is incarcerated. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

### B.   Motion for Summary Judgement

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment is appropriate where

5

"the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 262 (3d Cir. 2010) (quoting Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993)).

At the Rule 56 stage, the court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014). This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue. Liberty Lobby, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 192 (3d Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 252)

(alteration in original).  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.  Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017) (quoting Berkeley Inv. Grp. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006)).

## III.   DISCUSSION

Foura contends that the complaint must be dismissed because a Bivens remedy does not exist for Drayton's Eighth Amendment conditions-of-confinement claim.  He alternatively argues that because Drayton failed to administratively exhaust his Eighth Amendment claim, he has procedurally defaulted that claim and summary judgment must be granted in Foura's favor. The court will take each argument in turn.

### A.   Conditions-of-Confinement Bivens Claim

As the court alluded to in its earlier opinion, Bivens remedies are limited and do not exist for every constitutional wrong.  With this issue now squarely presented in Foura's motion to dismiss,[1] the court finds that Drayton's conditions-of-confinement claim involves a new Bivens context and that an extension of Bivens is unwarranted under the circumstances of this case.

---

[1] Drayton did not respond to Foura's Rule 12(b)(6) argument that a Bivens remedy does not exist for an Eighth Amendment conditions-of-confinement claim.  See generally Doc. 20.

7

In 1971, the Supreme Court held that, "even absent statutory authorization, it would enforce a damages remedy" to compensate individuals who experienced violations by federal officers of the Fourth Amendment's prohibition against unreasonable searches and seizures. Ziglar v. Abbasi, 582 U.S. 120, 130-31 (2017); Bivens, 403 U.S. at 397. Subsequently, the Court extended the Bivens cause of action in two cases involving other types of constitutional violations. First, in Davis v. Passman, 442 U.S. 228, 248-49 (1979), the Court concluded that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her based on gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment implied a cause of action for damages against federal prison officials who failed to provide adequate medical treatment to inmates. See Carlson v. Green, 446 U.S. 14, 19 (1980). "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." Abbasi, 582 U.S. at 131.

Over the years that followed, the Supreme Court has "consistently refused to expand Bivens actions beyond these three specific contexts." Mack v. Yost, 968 F.3d 311, 318 (3d Cir. 2020). The Supreme Court has specifically noted that

"expanding the Bivens remedy is now a 'disfavored' judicial activity." Abbasi, 582

U.S. at 135 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).

In Ziglar v. Abbasi, the Supreme Court provided a "restrictive, two-step

framework for courts to follow when analyzing Bivens claims." Mack, 968 F.3d at

317. First, the court must determine whether the case presents a "new context,"

i.e., if it is "different in a meaningful way from previous Bivens cases decided by

[the Supreme] Court." Id. (alteration in original) (quoting Abbasi, 582 U.S. at

139). The Supreme Court has defined "new context" broadly, explaining that "a

modest [Bivens] extension is still an extension." Id. (quoting Abassi, 582 U.S. at

147). A Bivens claim "may arise in a new context even if it is based on the same

constitutional provision as a claim in a case in which a damages remedy was

previously recognized." Hernandez v. Mesa, 589 U.S. 93, 103 (2020).

If the case presents a new context, courts must then consider whether

special factors counsel against extending the Bivens remedy. See Mack, 968

F.3d at 317 (citing Abbasi, 582 U.S. at 136). If so, it must reject the requested

extension. See id. (citing Hernandez, 589 U.S. at 102). The Supreme Court has

clarified that this inquiry "must concentrate on whether the Judiciary is well

suited, absent congressional action or instruction, to consider and weigh the

costs and benefits of allowing a damages action to proceed." Abbasi, 582 U.S.

at 136. If the court "ha[s] reason to pause before applying Bivens in a new

context or to a new class of defendants," then special factors counseling hesitation exist. Hernandez, 589 U.S. at 102. There may be many special factors, but two are "particularly weighty: the availability of an alternative remedial structure and separation-of-powers concerns." Mack, 968 F.3d at 320 (internal quotation marks omitted).

Here, it is clear that Drayton's Eighth Amendment conditions-of-confinement claim presents a new Bivens context. None of the Supreme Court's Bivens cases involved an Eighth Amendment conditions-of-confinement claim regarding allegedly unconstitutional restraint with lack of access to food, water, and bathroom facilities.

Moreover, another court in this district, in a well-reasoned and thorough opinion involving facts nearly identical to Drayton's allegations, has already determined that such a claim presents a new Bivens context. See Hill v. Lappin, 561 F. Supp. 3d 481, 486-88 (M.D. Pa. 2021) (Conner, J.). In Hill, the prisoner-plaintiff alleged that he was kept in "four-point restraints" without access to the bathroom for "a 43-hour period, purportedly forcing him to lie in his own waste." Id. at 488. The court found such a claim to "differ meaningfully" from prior Supreme Court Bivens cases and thus it presented a new Bivens context. See id.; see also Mammana v. Barben, No. 4:17-CV-645, 2020 WL 3469074, at *3 (M.D. Pa. June 25, 2020) (Brann, J.) (noting differing elements for medical-

deliberate-indifference claim in Carlson and conditions-of-confinement claims and finding that conditions-of-confinement claim presented a new Bivens context), aff'd, 856 F. App'x 411 (3d Cir. 2021) (nonprecedential); Mammana v. Barben, 856 F. App'x 411, 414 (3d Cir. 2021) (nonprecedential).  The court finds no basis to depart from the well-reasoned analysis in Hill v. Lappin—as confirmed by an unpublished yet persuasive decision from the United States Court of Appeals for the Third Circuit in Mammana v. Barben—that an Eighth Amendment conditions-of-confinement claim like Drayton's presents a new Bivens context.

The second step under Abbasi asks whether special factors counsel against extending the Bivens remedy.  The court need not perform an exhaustive assessment of whether special factors exist in this case.  That heavy lifting has already been ably performed by multiple courts in this district.  See Hill, 561 F. Supp. 3d at 488-90; Mammana, 2020 WL 3469074, at *3-4.  Moreover, the Third Circuit, albeit in a nonprecedential opinion, recently held that "a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement" implicates the "particularly weighty" special factor of separation-of-power principles and thus counsels against an extension of Bivens.  See Mammana, 856 F. App'x at 414-16.

In sum, Drayton's Eighth Amendment conditions-of-confinement claim represents a new Bivens context, and special factors counsel against an extension of the Bivens remedy to this new context.  Because no Bivens remedy exists for this claim, dismissal pursuant to Rule 12(b)(6) is required.  That dismissal will be with prejudice, as granting leave to amend would be futile.  See Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." (citation omitted)); Centifanti v. Nix, 865 F.2d 1422, 1431 (3d Cir. 1989) ("[T]he district court may properly deny leave to amend where the amendment would not withstand a motion to dismiss.").

## B.    Administrative Exhaustion

Even if a Bivens remedy existed, Drayton's Eighth Amendment claim would still falter at summary judgment.  That is because Drayton failed to exhaust administrative remedies.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.  See 42 U.S.C. § 1997e(a); Ross v. Blake, 578 U.S. 632, 639, 642 (2016) (explaining that only "available"

remedies must be exhausted).  The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.  Woodford v. Ngo, 548 U.S. 81, 85 (2006).

The Bureau of Prisons (BOP) has a specific internal system through which federal prisoners can request review of nearly any aspect of their imprisonment. See generally 28 C.F.R. §§ 542.10-.19.  That process begins with an informal request to staff and progresses to formal review by the warden, appeal with the Regional Director, and—ultimately—final appeal to the General Counsel.  See id. §§ 542.13-.15.

Defendants maintain that Drayton never filed his initial administrative remedy request to the warden (using Form BP-9) regarding the events of December 20, 2021, see id. § 542.14(a), and therefore his claims are procedurally defaulted.  They note that although Drayton appealed to the Regional Director and to the General Counsel (often referred to as "Central Office"), those appeals were *rejected* on procedural grounds rather than denied on the merits.  (See Doc. 18-1 at 1 ¶ 4; Doc. 18-1 at 11; Doc. 20-1 at 1 (rejecting appeal to Central Office, concurring with rejection by Regional Office on procedural grounds, and advising Drayton to "follow directions provided on prior rejection notices")).

Drayton alleges that he submitted both a BP-8 (informal resolution request) and a BP-9 (initial administrative remedy request) about the incident to FCI Schuylkill staff and that these filings were ignored due to "staff negligence." (See Doc. 20 at 1; Doc. 20-1 at 7). Drayton, however, has not supported his bare assertions with competent evidence. He has not, for example, provided copies of these initial remedy forms, proffered an affidavit or declaration to support his allegations, or pointed to any other record evidence that would show that he submitted a BP-8 or BP-9 to FCI Schuylkill officials. At summary judgment, a plaintiff "may not rest upon the mere allegations or denials of his pleadings but, instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." Jutrowski v. Township of Riverdale, 904 F.3d 280, 288-89 (3d Cir. 2018) (quoting D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 268-69 (3d Cir. 2014)). Drayton has provided no countervailing evidence to rebut Foura's evidence showing that Drayton never properly exhausted administrative remedies.

Administrative exhaustion requires an inmate to complete each step of their facility's administrative remedy process and to do so properly. See Woodford, 548 U.S. at 90 (explaining that proper administrative exhaustion "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)" (citation omitted)). Drayton did not properly

complete each step of the BOP's administrative remedy process or receive a final decision on the merits.  Rather, his appeals were repeatedly rejected on procedural grounds.  Accordingly, he procedurally defaulted his Eighth Amendment claim against Foura.  See Spruill v. Gillis, 372 F.3d 218, 230-31 (3d Cir. 2004).  Without a basis to excuse procedural default, Drayton's claim is barred by the exhaustion mandate of the PLRA.  Thus, even if a Bivens remedy existed for his conditions-of-confinement claim, the court would be constrained to grant summary judgment in Foura's favor on that claim.

## IV.   CONCLUSION

Based on the foregoing, the Court will grant Foura's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dismissal will be with prejudice.  An appropriate Order follows.

Date: 5-15-24

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court